IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD MOORE, # A-70777, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )   Case No. 15-cv-092-JPG ) |
| RICK HARRINGTON, KIM BUTLER, ROBERT E. HUGHES, V. SMITH, and UNKNOWN PARTY (John Doe #1), | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a life sentence. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that he was denied due process in a prison disciplinary hearing, and housed under unconstitutional conditions of confinement while in segregation.

In the complaint, Plaintiff states that he was falsely accused of a disciplinary infraction on February 6, 2014, and was later found guilty. According to Plaintiff, while he was in the law library, he was given permission by paralegal assistant Tonya Knust to approach her window and discuss a question about some missing exhibits in his legal material (Doc. 7, p. 8). After their conversation ended, C/O Lindsey, who had been standing nearby, ordered Plaintiff to give him his I.D. card. Plaintiff asked what he did, but complied and sat down.

Defendant Hughes arrived at the law library just after this. Defendant Hughes spoke with C/O Lindsey and Plaintiff about what had happened, and then cuffed Plaintiff and took him

away. C/O Lindsey wrote a disciplinary ticket stating that Plaintiff had disobeyed his order to return to his seat, had threatened the inmate clerks, and made other threatening comments (Doc. 7-2, pp. 12-13). Plaintiff denies each accusation.

Plaintiff's ticket was heard on February 10, 2014. When Plaintiff saw that Defendant Hughes was on the adjustment committee, he immediately objected because Defendant Hughes had investigated the charges (Doc. 7, pp. 9-10). Plaintiff's objection was ignored, and the hearing proceeded. Prior to the hearing, Plaintiff had submitted a request slip to have Ms. Knust called as his witness. He repeated this request at the hearing, and submitted his written statement (Doc. 7-3, p. 14) to summarize what he believed she would say. Plaintiff also asked if the inmate law clerks he allegedly threatened could be called. However, these requests were refused.

Plaintiff was found guilty of the charges; his punishment included three months in segregation (Doc. 7-3, p. 13). The hearing summary report falsely stated that Plaintiff had not requested a witness, even though he had sent his request to call Ms. Knust on February 6, 2014, as soon as he received the ticket. Plaintiff filed a grievance over the disciplinary action. The report denying his grievance stated that the grievance officer spoke with Ms. Knust and confirmed the disciplinary report was correct (Doc. 7-2, p. 17). However, when Plaintiff later talked to Ms. Knust, she said she had never spoken to the grievance officer (Doc. 7, p. 11).

Plaintiff filed two "emergency" grievances with Defendant Warden Harrington over the alleged due process and rule violations in his disciplinary hearing, and wrote him a letter regarding his other grievances (Doc. 7, p. 14). Defendant Harrington approved the disciplinary action, but never responded to Plaintiff's complaints.

When Plaintiff was moved to segregation after the disciplinary hearing, he was placed in Cell 608 in North 2 by Defendant John Doe #1, the 7-3 shift gallery officer (Doc. 7, pp. 15, 18).

His mattress and pillow were dirty, stained, and smelled of urine; he had no sheets or linens and had to sleep directly on the soiled mattress. The cell was dirty and the cold water did not work (although the cell did have hot water). Plaintiff complained to Defendant Smith and Defendant John Doe #1 about these conditions. However, he was not given any sheets until he received his personal property ten days later. He was never provided with cleaning supplies for the dirty cell, toilet, or sink, despite his requests. Defendants Smith and John Doe #1 said that there were no other mattresses or pillows and no cleaning supplies. A work order had been submitted to repair the cold water, but the prison had no money for parts. They could not move him because there was no other available cell (Doc. 7, p. 17).

Plaintiff raised the same complaints to the officers on the 3-11 shift and 11-7 shift, but was told that the first shift (7-3) officers would have to address the problems. When he continued to complain, some officers threatened to write Plaintiff another ticket if he did not stop. Not wanting to lengthen his time in segregation, Plaintiff slowed down with his complaints. Plaintiff was "sick all the time" while he was in Cell 608, and developed a bad rash. These conditions were unchanged for the 90 days that Plaintiff remained in segregation.

On February 14, 2014, Plaintiff sent an emergency grievance regarding the cell conditions to Defendant Harrington, followed by a letter asking him to help Plaintiff get a clean mattress, pillow, and sheets. He never received any response (Doc. 7, pp. 15, 20). Plaintiff complains generally that grievances are frequently lost at Menard, and that many cells have plumbing and water problems such as he experienced.

Plaintiff seeks compensatory and punitive damages for the alleged constitutional violations (Doc. 7, p. 24).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts, which generally correspond to the claims listed by Plaintiff. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Due process violation in the conduct of the disciplinary hearing by Defendant Hughes, who refused to call Plaintiff's witnesses;
>
> **Count 2:** Violation of prison rules by Defendant Hughes, who served on the hearing committee even though he had investigated Plaintiff's disciplinary charge;
>
> **Count 3:** Claims against Defendant Harrington for failure to respond to Plaintiff's grievances over the disciplinary hearing and the conditions in segregation;
>
> **Count 4:** Cruel and unusual punishment claim against Defendants Smith, John Doe #1, Hughes, and Harrington, for confining Plaintiff in unsanitary conditions.

Counts 1 and 4 shall proceed for further consideration. However, Counts 2 and 3 shall be dismissed pursuant to § 1915A, for failure to state a constitutional claim upon which relief may be granted.

**Count 1 – Deprivation of a Liberty Interest without Due Process**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in

which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In Plaintiff's case, he claims to have made an advance request for a witness, paralegal Knust, to be called. He also asked for the inmate law clerks to be interviewed or called. Neither request was honored, and no security concerns were mentioned with reference to the denial. At this stage, these facts indicate that Plaintiff was denied one of the due process protections required by *Wolff*. Plaintiff also questions the impartiality of one member of the hearing panel, Defendant Hughes. Without further information, it is not clear whether Plaintiff was denied the right to have his charges heard by an impartial tribunal, which is another due process concern discussed in *Wolff*. *See Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983).

Even if a disciplinary hearing did not comport with due process, that is not the end of the inquiry. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than

between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). In *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013), the Seventh Circuit revisited its observation in *Marion* that even six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." 734 F.3d at 744 (quoting *Marion*, 559 F.3d at 698) (internal quotations omitted).

In Plaintiff's case, he spent 90 days in punitive segregation. This amount of time would not, by itself, raise due process concerns – particularly when viewed in the context of Plaintiff's life sentence. However, Plaintiff was made to serve the entire 90 days in a filthy cell, sleeping on a dirty mattress that smelled of urine, and was given no cleaning supplies to mitigate the unclean and unhealthy conditions. Given his allegations of possible due process violations in the conduct of his disciplinary hearing, Plaintiff's claim that he was deprived of a liberty interest

without due process cannot be dismissed at this juncture. He may therefore proceed with **Count 1** against Defendant Hughes, who conducted the hearing on Plaintiff's disciplinary charges.

To the extent that Plaintiff seeks to hold other Defendants accountable for this due process claim, however, the facts alleged do not support liability. Defendant Harrington, the warden at the time, gave administrative approval to the disciplinary action, but was not personally involved in conducting the hearing. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). Signing off on a disciplinary report does not rise to the level of personal involvement necessary for liability to attach. For this reason, Defendant Harrington shall be dismissed from Count 1without prejudice.

Similarly, Plaintiff appears to assert a claim against current warden Defendant Kim Butler (who was assistant warden of programs at the time). He claims that she was "responsible in part for the supervision of the clinical services and grievance committee" (Doc. 7, p. 16). However, the complaint does not describe any direct involvement by Defendant Butler in the disciplinary matter or any other potential violations of his rights. She cannot be held liable on account of her supervisory role, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Defendant Butler shall also be dismissed from Count 1.

**<u>Dismissal of Count 2 – Violation of Prison Rules on the Conduct of Disciplinary Hearings</u>**

Defendant Hughes' participation on the disciplinary hearing committee may have run afoul of the prison rules that are designed to exclude an official who investigated a disciplinary

charge from serving on the panel that decides whether the inmate is guilty. However, even if these state administrative rules were violated, this would not implicate Plaintiff's constitutional rights. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *see also Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

**Count 2** shall therefore be dismissed with prejudice.

### Dismissal of Count 3 – Failure to Respond to Grievances

Plaintiff sent a number of grievances and complaints to Defendant Harrington over both the disciplinary hearing and the conditions of his segregation cell. Defendant Harrington never responded, and it is unknown whether he ever received any of Plaintiff's complaints. In any case, no constitutional claim will arise from a Defendant's failure to answer grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). **Count 3** shall thus be dismissed with prejudice.

### Count 4 – Unconstitutional Conditions of Confinement

The segregation conditions described in Count 1 may also support a distinct claim under the Eighth Amendment. The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human

needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Claims under the Eight Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived the inmate of the minimal civilized measure of life's necessities.   *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In conditions of confinement cases, this is deliberate indifference to inmate health or safety.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions.  *Farmer*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  It is well-settled that mere negligence is not enough.  *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities."  *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher*, 468

F.3d 488 (7th Cir. 2006); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)). Further, "conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 842 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis*, 468 F.3d at 493; *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)).

In Plaintiff's case, he had to endure for 90 days the filthy mattress and pillow which exposed him to the odor of urine; the dirty cell, toilet, and sink, and lack of any supplies to clean them; and the inadequate water supply. The combination of these objective conditions, at this stage, satisfies the first element of an Eight Amendment claim. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]")

Turning to the subjective component of the deliberate indifference claim, Plaintiff names two Defendants (Smith and John Doe #1) who were directly responsible for placing him in the filthy cell and failing to remedy the conditions in response to Plaintiff's complaints. These Defendants' responses to Plaintiff's requests for assistance – that no replacement mattress, cleaning supplies, or plumbing repair parts were available due to lack of funds – may suggest that they had no means to mitigate the problems in Plaintiff's cell. But the key question in a deliberate indifference claim is whether a Defendant made a reasonable effort to correct the unconstitutional conditions. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (the Eighth Amendment requires only that an official take "reasonable measures to meet a substantial risk of serious harm."). Whether Defendants Smith and John Doe #1 did so cannot be determined from

the complaint. Plaintiff may thus proceed with his claim in **Count 4** against Defendants Smith and John Doe #1.

As for the other Defendants, Hughes, Butler, and Harrington, the complaint does not indicate that any of them was personally involved in subjecting Plaintiff to the unsanitary conditions. As noted above, Plaintiff has a colorable due process claim against Defendant Huhges in Count 1, but this Defendant had no apparent responsibility for the condition of Plaintiff's segregation cell. For the reasons discussed in Count 1, neither Defendant Butler nor Defendant Harrington may be held liable for the conditions merely because of their supervisory authority.

Only if a supervisory official has directed or given knowing consent to the unconstitutional conduct of another, would the supervisor have sufficient personal involvement to be responsible for the violation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). The complaint does not suggest that Defendant Harrington or Butler had any such knowledge regarding the conditions in Plaintiff's segregation cell. Likewise, there is no indication that Defendant Harrington received Plaintiff's grievances or was otherwise made aware of the bad conditions. Unless he had knowledge of the risks Plaintiff faced, he could not have acted or failed to act with deliberate indifference to those risks. At this juncture, Defendants Harrington and Butler shall be dismissed from **Count 4** without prejudice.

**Disposition**

**COUNTS 2 and 3** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. Defendants **HARRINGTON** and **BUTLER** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **HUGHES** and **SMITH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe #1) Defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: February 23, 2015**

    *s/J. Phil Gilbert*
    United States District Judge